**F I L E D**
United States Court of Appeals
Tenth Circuit

**SEP 1 2000**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLOTTE ANN PLOTNER,

     Plaintiff - Appellant,

v.

AT&T CORPORATION, a New York
Corporation; GERALD L. GAMBLE,
CHARLES C. GREEN, KENNETH N.
MCKINNEY, MARK D. COLDIRON,
JIM T. PRIEST, GARY D.
HAMMOND, and MCKINNEY
STRINGER & WEBSTER, PC all as
Co-Trustees of the Barney U. Brown
Trust; BARNEY U. BROWN, JR.;
VIRGINIA MARTIN BROWN,

     Defendants - Appellees.

No. 99-6156

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 97-CV-1832-M)**

---

Garvin A. Isaacs, Oklahoma City, Oklahoma, for the appellant.

Hugh A. Baysinger, Oklahoma City, Oklahoma for Gerald L. Gamble, appellee.

Andrew M. Coats of Crowe & Dunlevy, Oklahoma City, Oklahoma (Brooke S.
Murphy and Le Anne Burnett of Crowe & Dunlevy, Oklahoma City, Oklahoma;
and James M. Stalcup, Jr., Lucent Technologies, Inc., Lisle, Illinois for AT&T
Corporation, and Earl D. Mills and Barbara K. Buratti of The Mills Law Firm,
Oklahoma City, Oklahoma, for Charles C. Green, Kenneth N. McKinney, Mark D.

Coldiron, Jim T. Priest, Gary D. Hammond and McKinney, Stringer & Webster, P.C., with him on the brief) for AT&T Corporation, appellee.

Michael T. Gray (James E. Britton, Jackie L. Hill, Jr. and Stephen A. Kepner, Jr. on the brief), Britton, Gray and Hill, P.C., Oklahoma City, Oklahoma for Barney U. Brown, Jr. and Virginia Martin Brown, Co-Trustees of the Barney U. Brown Trust, appellee.

---

Before **BRISCOE**, **ANDERSON** and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

This appeal emerges from a procedural morass that began with appellant Charlotte Ann Plotner's 1992 bankruptcy proceedings. As a threshold matter, we examine the effect of Saturdays, Sundays, and holidays on "compound" filing deadlines—i.e., filing deadlines consisting of an initial period subject to a finite extension. Concluding the appeal is timely, we determine, in light of the series of underlying suits brought in bankruptcy and district courts, whether the doctrine of res judicata bars the claims Plotner brings in the instant adversary proceeding. We then resolve whether or not the doctrine of res judicata applies in non-core bankruptcy proceedings. Joining the Second, Sixth, and Ninth Circuits, we conclude that it does. We further conclude that the necessary elements of res judicata are present, and the doctrine therefore bars Plotner's claims. We exercise jurisdiction pursuant to 28 U.S.C. § 158(d) and affirm.

# I

Although particular matters are hotly disputed, the underlying facts of this case are relatively straightforward. It is the procedural history that is unusual. Plotner, a real estate agent, filed for bankruptcy in 1992. Her primary asset was a parcel of land we will refer to as "the I-40 property," adjacent to an AT&T facility. Central Bank and defendant Brown Trust were mortgage-holders and secured creditors of the I-40 property.

In 1993, the bankruptcy court approved a plan of reorganization for Plotner. Under this plan, through the "Plotner Land Trust Agreement" (PLTA), the land was transferred to a trust, under "Marketing Trustee" Gerald Gamble and "voting trustees" Plotner, Central Bank, and the Brown Trust. (I Appellant's App. at 227-33; II Appellant's App. at 272-92.) Central Bank later transferred its rights to the Brown Trust, giving the Browns majority control over the Plotner land trust. In April 1994, AT&T, through undisclosed intermediary Charles Green, made a $1.1 million offer for the property. The Brown Trust, opposed by Plotner, voted to approve the sale, and Gamble accepted the Green/AT&T offer on May 6, 1994, immediately before the expiration of the offer. Green then transferred his interest to AT&T.

Alleging the existence of a superior oral offer, Plotner filed an Application for Rejection of Real Estate Contract in the bankruptcy court. This began the

long series of litigation events enumerated below, eventually culminating in this appeal. Plotner now alleges an additional fact she claims to be dispositive of this appeal: that unbeknownst to her, AT&T released pollutants that contaminated her property, and failed to disclose the release to her or to the court. It is undisputed that Plotner learned of the pollution at some time no later than "some time in August, 1994." (IV Appellant's App. at 1134; V Appellant's App. at 1196.)

Extensive litigation has followed the denial of Plotner's motion to reject the real estate contract and the ensuing sale of the I-40 property. There are no fewer than six previous court orders relevant to the disposition of this appeal, and we summarize them briefly below.

1. <u>In re: Plotner</u>, No. 92-17405-LN (Bankr. W.D. Okla. June 16, 1994) ("<u>Plotner I</u>")

The first written decision arose out of Plotner's attempt to reject the sale of the land to Green. Judge Lindsey denied her application, specifically finding the sale of the property to Green consistent with the PLTA. Although Green's offered price of $1.1 million was less than the "release price" specified in the agreement, the PLTA nevertheless authorized the sale of the property for less than the release price upon majority vote of the trustees. Finding such a vote had occurred and that the plan of reorganization had been substantially consummated, the bankruptcy court denied Plotner's application.

2.  Plotner v. AT&T, No. CIV-94-1254-A (W.D. Okla. Sept. 9, 1994)

("Plotner I Appeal")

Plotner appealed the denial of her application to reject the land sale to the

district court.  Judge Alley, rejected the appeal as moot under the bankruptcy

mootness doctrine because Plotner had failed to obtain a stay of the sale and

AT&T had closed on the property.  Plotner argued that an exception to the

doctrine applied because AT&T was not a good faith purchaser, and that the

district court could not make the initial determination of good faith and was

required to remand to the bankruptcy court.  Although not presented with

Plotner's pollution allegations, Judge Alley concluded the district court "is

properly positioned for determining whether appellee acted in good faith" and

found that AT&T's use of an undisclosed intermediary did not deprive it of good

faith purchaser status.  (II Appellant's App. at 513-14 (citing Bleaufontaine, Inc.

v. Roland Int'l (In re Bleaufontaine, Inc.), 634 F.2d 1383, 1388 n.8 (5th Cir. Unit

B 1981) (holding that remand is not necessary in all cases involving the sale of a

debtor's property)).)  Additionally, the district found the purchase to be for value

because it was for more than 75% of the average of appraisals of the property.

(See II Appellant's App. at 513-14.)  Finally, Judge Alley noted he was not

dismissing as moot Plotner's claims against the Brown Trust for breach of

fiduciary duty, because the mootness doctrine did not prevent award of damages

- 5 -

against the trustees if Plotner could prove such a breach. Plotner then voluntarily dismissed the appeal.

3. <u>Plotner v. AT&T Corp.</u>, No. CIV-95-50-R (W.D. Okla. July 30, 1996) ("<u>Plotner II</u>")

Plotner next filed suit not in bankruptcy court but rather in federal district court against AT&T, Gamble, and Green and his law partners in AT&T's law firm McKinney, Stringer & Webster (collectively "the law firm defendants"). Her civil complaint alleged various claims of fraud, negligence, and breach of fiduciary duty, including, by this time, the allegations of failure to disclose the release of pollutants. The district court dismissed for lack of jurisdiction. First, Judge Russell found a lack of diversity jurisdiction residence of both Plotner and the law firm defendants in Oklahoma, rejecting Plotner's unsupported claims of New Mexico residency. Next, Judge Russell considered whether or not to exercise the power of a federal court to entertain an independent equitable action to attack a different federal court judgment pursuant to Fed. R. Civ. P. 60(b). He declined to do so, finding the exercise of Rule 60(b) ancillary jurisdiction unjustified, on grounds that Plotner failed to allege any affirmative misrepresentations or duty to disclose, failed to show that she or the bankruptcy estate suffered harm, and failed to show an inability to obtain an adequate remedy in the bankruptcy court. Finding neither diversity jurisdiction nor grounds for

Rule 60(b) ancillary jurisdiction, and declining to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, the district court dismissed Plotner's suit.

4. Plotner v. AT&T Corp., No. 96-6212, 1997 WL 234787 (10th Cir. May 7, 1997) ("Plotner II Appeal")

Plotner appealed the jurisdictional ruling to us, and we affirmed that ruling in an unpublished order and judgment. See id., 1997 WL 234787, at *2. In that appeal, Plotner argued that the district court had federal question jurisdiction over claims of bankruptcy fraud and use of the courts to deprive her of due process rights. See id. at *1. We rejected these claims because they had not been asserted before the district court. See id. Additionally, we found no abuse of discretion in the district court's decision not to exercise ancillary jurisdiction over the case as an independent action. See id. at *2; see also King Fisher Marine Serv., Inc. v. 21st Phoenix Corp., 893 F.2d 1155, 1158 (10th Cir. 1990).

5. Plotner v. AT&T Corp. (In re: Plotner), No. 92-17405-TS, Adv. No. 96-1220-TS (Bankr. W.D. Okla. Aug. 6, 1997) ("Plotner III")

On June 21, 1996, prior to the resolution of Plotner II, Plotner filed an adversary proceeding in bankruptcy court against all the instant defendants, alleging fraud, tortious interference, and breach of fiduciary duty, likewise arising out of defendants' conduct in connection with the sale of the I-40 property. (See

II Appellant's App. at 520, 549-78.) Judge TeSelle issued findings of fact and conclusions of law dismissing Plotner's claims on res judicata grounds, specifically finding the instant case to be a core bankruptcy proceeding and therefore subject to res judicata based on Plotner I. He found that Plotner I was a final judgment on the merits, involving the same parties (the law firm defendants in privity with AT&T because the suit involved their capacity as AT&T's representative at the time of Plotner I), and the same issues, under the Tenth Circuit's "transactional" approach to issue preclusion. Although Judge Alley dismissed Plotner I in part as moot, it is undisputed that Plotner failed to have the bankruptcy court order vacated pursuant to United States v. Munsingwear, Inc., 340 U.S. 36 (1950). Finding the additional elements of res judicata present and therefore concluding that the doctrine of res judicata barred collateral attack on Judge Lindsey's decision, Judge TeSelle also considered Plotner's direct attack thereon under Rule 60(b) and declined to grant her motion, holding the fraud provision of Rule 60(b)(3) untimely invoked and the "catch-all" provision of Rule 60(b)(6) inapplicable. The court also rejected the independent action exception to Rule 60(b), see Crosby v. Mills, 413 F.2d 1273, 1276 (10th Cir. 1969), finding Plotner "had ample opportunity to raise before either Judge Lindsey or Judge Alley every allegation contained in her Amended Complaint, yet failed to take advantage of that window of opportunity," (VI Appellant's App. at 1651).

6.  <u>Plotner v. AT&T Corp.</u>, No. CIV-97-1832-M  (W.D. Okla. Mar. 17, 1999) ("<u>Plotner III</u> Appeal")

Plotner appealed Judge TeSelle's order to the district court.  The district court, Judge Miles-LaGrange, affirmed with only one significant difference in reasoning from that of the bankruptcy court.  Avoiding the issue of whether <u>Plotner III</u> is a core proceeding for bankruptcy purposes, the district court adopted the reasoning of the Second, Ninth, and Sixth Circuits that "the doctrine of res judicata does apply to both core and non-core proceedings."  (VII Appellant's App. at 1960) (citations omitted).   Plotner now appeals.

## II

During the pendency of this appeal, we requested supplemental briefing on whether the district court had jurisdiction in this case to hear Plotner's appeal from the bankruptcy court ruling below.  If the district court lacked jurisdiction, we necessarily would have no jurisdiction pursuant to 28 U.S.C. § 158(d), the district court's order now being appealed would not serve as a valid "final decision[], judgment[], order[] . . . or decree[]" for us to review.

The issue is whether the district court lacked jurisdiction by virtue of Plotner's failure to timely file her notice of appeal to the district court from the bankruptcy court's judgment in <u>Plotner III</u>.  Fed. R. Bankr. P. 8002(a), 11 U.S.C., provides for a ten-day period for filing a notice of appeal in the district court,

subject to an extension under Fed. R. Bankr. P. 8002(c), 11 U.S.C., for a period "not [to] exceed 20 days."

Plotner offers the following sequence of events by way of explanation that her appeal was timely. Judge TeSelle's order in Plotner III was filed on August 6, 1997. On August 18, 1997, Plotner applied for extension of time to file a notice of appeal pursuant to Rule 8002(c). In an order filed August 21, 1997, Judge TeSelle ruled Plotner "should be granted an additional twenty (20) days in which to file her Notice of Appeal," and ordered that Plotner's time to file notice be "extended to September 8, 1997." Plotner filed her Notice of Appeal on September 8, 1997, therefore complying with the terms of Judge TeSelle's August 21, 1997, order.

The bankruptcy court's final order was entered August 6, 1997. Ten days from that date was August 16, a Saturday.[1] Plotner argues that therefore the ten-day period actually expired the following Monday, August 18, 1997. Twenty days from that date is Sunday, September 7. Plotner argues that therefore the final deadline for her to file within the twenty-day extension was Monday, September 8, 1997—the date she filed her notice of appeal.

---

[1] We take judicial notice of the days of the week upon which the dates at issue fall.

- 10 -

Appellees, however, argue that examination of the foregoing sequence of events does not end the inquiry. In passing, they argue jurisdiction is improper because Plotner failed to include the order extending time to appeal in her appendix, and therefore it is not properly before the court. Although we "need not remedy any failure of counsel to provide an adequate appendix," 10th Cir. R. 30.1(A)(3), (citing 10th Cir. R. 10.3(B)), we exercise our power to remedy the omission pursuant to Fed. R. App. P. 10(e)(2)(C).

Appellees also raise a substantive argument against the timeliness of Plotner's notice of appeal to the district court. Appellees correctly note thirty days (ten days plus a twenty-day extension) from August 6, 1997, is Friday, September 5, 1997, not September 8, 1997. We are aware of no bankruptcy rule permitting an extension of time longer than twenty days. See Anderson v. Mouradick (In re Mouradick), 13 F.3d 326, 328 (9th Cir. 1994). Therefore, if we agree with appellees that Rules 8002(a) and (c) are to be construed together to create a maximum period for appeal, including extension, of thirty days, Plotner's appeal would have been due no later than September 5, 1997.

In general, if a filing deadline mandated by statute or rule falls on a weekend, the affected party has until the next working day to file. See Fed. R. Bankr. P. 9006(a), 11 U.S.C. ("In computing any period of time prescribed or allowed by these rules . . . [t]he last day of the period so computed shall be

included, unless it is a Saturday, a Sunday, or a legal holiday . . . in which event the period runs until the end of the next day which is not one of the aforementioned days." ). This raises the question whether, under these circumstances, Rule 9002(a) applies twice, to extend both the initial ten-day period and the twenty-day extension, or whether it applies only once, to an overall thirty-day period derived from combining Rules 8002(a) and (c). We conclude that the district court's implicit decision to apply the rule twice is correct. Any other result would effectively deprive parties of the benefit of Rule 9006(a) as to the initial ten-day filing period. Therefore, we agree with Plotner that her appeal to the district court was timely, and her appeal to us is proper under 28 U.S.C. § 158(d).

### III

Insofar as this is a summary judgment motion, our usual summary judgment standard of review applies. See Fed. R. Civ. P. 56(c). However, the question of the application of res judicata to the facts, viewed in the light most favorable to Plotner, is a pure question of law subject to de novo review. See State Bank of S. Utah v. Gledhill (In re Gledhill), 76 F.3d 1070, 1082 (10th Cir. 1996). "Where the facts are not in dispute, we determine de novo whether the district court correctly applied the substantive law of res judicata." Nwosun v. General Mills Restaurants, Inc., 124 F.3d 1255, 1257 (10th Cir. 1997) (citing May v. Parker-

Abbott Transfer & Storage, Inc., 899 F.2d 1007, 1009 (10th Cir. 1990)).  The

fundamental policies underlying the doctrine of res judicata (or claim preclusion)

are finality, judicial economy, preventing repetitive litigation and forum-

shopping, and "the interest in bringing litigation to an end."  Id. at 1258.[2]

## A.  Elements of Res Judicata

We have characterized the elements of a res judicata defense as follows:

> Res judicata requires the satisfaction of four elements: (1) the prior
> suit must have ended with a judgment on the merits; (2) the parties
> must be identical or in privity; (3) the suit must be based on the same
> cause of action; and (4) the plaintiff must have had a full and fair
> opportunity to litigate the claim in the prior suit.

Id. at 1257 (citing Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation,

975 F.2d 683, 686 (10th Cir. 1992)); but cf. Yapp v. Excel Corp., 186 F.3d 1222,

1227 n.4 (10th Cir. 1999) (stating that "full and fair opportunity to litigate" is not

actually an element of res judicata, but rather "an exception to the application of

claim preclusion when the [first] three referenced requirements are otherwise

present" (citing Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 n. 22,

(1982)).  We address each of those elements, as well as the additional question of

whether or not res judicata applies to non-core bankruptcy proceedings.

---

[2]  Because the parties have used the term "res judicata" throughout this litigation, we continue to employ that term, although we noted in Yapp v. Excel Corp., 186 F.3d 1222, 1226 n.1 (10th Cir. 1999), a preference for the term "claim preclusion."

1. Judgment on the Merits

This case differs slightly from the conventional res judicata paradigm in that Judge Alley, in the Plotner I appeal, dismissed the appeal of Judge Lindsey's order as moot, at least as to the sale itself, because Green and Gamble had already closed on the sale. See Boullioun Aircraft Holding Co. v. Smith Management (In re Western Pac. Airlines, Inc.), 181 F.3d 1191, 1195 (10th Cir. 1999) (discussing bankruptcy mootness doctrine). However, it is undisputed that Plotner never sought to obtain, and was never granted, an order vacating the judgment pursuant to Munsingwear, 340 U.S. at 40. See also U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 24-25 (1994). There is a general duty to vacate a lower court judgment when an appellate court dismisses a case as moot. See Munsingwear, 340 U.S. at 40. The purpose of this duty is to prevent a party from being bound by the preclusive effects of a judgment, "review of which was prevented through happenstance." Id. The duty to vacate, however, is not to be fulfilled sua sponte by the court, but rather a motion by one of the parties is required. See id. Thus, Plotner's failure to seek vacatur leaves Judge Lindsey's order a judgment on the merits, with preclusive effect. See Otasco, Inc. v. Mohawk Rubber Co. (In re Otasco Inc.), 18 F.3d 841, 843 (10th Cir. 1994).[3]

_____

[3] We have previously held, in an unpublished decision, that a bankruptcy court order "authorizing sale of real property . . . is a final order" for purposes of

(continued...)

- 14 -

Likewise, Judge Alley's Plotner I order became a final order for res judicata purposes when Plotner did not seek reconsideration of or appeal that order, but rather consented to dismissal of her appeal. Cf. Clark v. Haas Group, Inc., 953 F.2d 1235, 1238 (10th Cir. 1992) (holding that a "stipulated, voluntary dismissal of [the plaintiff's] first suit, approved by the court with prejudice, was a judgment on the merits" for res judicata purposes (citing Brooks v. Barbour Energy Corp., 804 F.2d 1144, 1146 (10th Cir. 1986))).

Plotner additionally argues that Plotner I does not represent a final judgment on the merits because her current claims would not have been "core proceedings" in the bankruptcy court. We address this issue in detail below in Section III.B, where we examine the applicability of the doctrine of res judicata

---

³(...continued)
28 U.S.C. § 158(d), which governs the jurisdiction of the courts of appeals over appeals from "final decisions, judgments, orders and decrees" under 28 U.S.C. § 158(a), (b). Bush v. United States Bankr. Ct. for the District of Colo., No. 93-1345, 1994 WL 496762, at **1 (10th Cir. Nov. 2, 1994) (citing Hendrick v. Avent, 891 F.2d 583, 586 (5th Cir. 1990)) (further citations omitted). The finality standard for purposes of determining appellate jurisdiction, however, is distinct from the "judgment on the merits" standard of the preclusion inquiry. See Magic Circle Energy 1981-A Drilling Program v. Lindsey (In re Magic Circle Energy Corp.), 889 F.2d 950, 953 (10th Cir. 1989) (discussing the standard for finality under 28 U.S.C. § 158(d)).

to claims that would have been non-core proceedings if originally brought in bankruptcy court.

2.  Identity or Privity of Parties

There is no meaningful dispute that the "identity of the parties" element is satisfied.  Plotner, the Brown Trustees, Gamble, and Green were parties to Plotner I .  AT&T appears on behalf of the same property interest as Green, creating privity between them.     See St. Louis Baptist Temple, Inc. v. FDIC    , 605 F.2d 1169, 1175 (10th Cir. 1979).  The law firm defendants appear by virtue of their activities as representatives of Green and AT&T, also creating privity.       See Henry v. Farmer City State Bank   , 808 F.2d 1228, 1235 n.6 (7th Cir. 1986) (holding that for res judicata purposes privity exists between a party and its attorneys).

3.  Same Cause of Action

We have adopted the "transactional approach" of Restatement (Second) of Judgements § 24 in analyzing the "same cause of action" element of res judicata. Petromanagement Corp. v. Acme-Thomas Joint Venture    , 835 F.2d 1329, 1335 (10th Cir. 1988) (relying on Restatement of Judgments § 24 (1980)).  In        Nwosun , we explained:

> Under this approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence.  All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation.

- 16 -

Nwosun, 124 F.3d at 1257 (citing Clark, 953 F.2d at 1238-39; May, 899 F.2d at 1009; Jarrett v. Gramling, 841 F.2d 354, 357-58 (10th Cir. 1988)). Despite Plotner's conclusory protestations to the contrary, our review of the record leads us to conclude there is no meaningful factual dispute that could refute the conclusion of several courts that all the claims in the instant action arise out of AT&T's purchase of the I-40 property pursuant to the PLTA. The fact that Plotner now presents some of her claims under the rubric of slightly different legal theories—here, tortious interference and attorney misconduct—does not obscure the fact that they all arise out of a single transaction.

It is noted that all claims relating to the alleged pollution of the property relate only to the failure to disclose such pollution in connection with the sale—the transaction at issue in Plotner I. Plotner asserts, for example, no personal injury claims from the pollution. For whatever reason, she did not assert the alleged pollution during Plotner I, despite the undisputed fact that she learned of it before Judge Alley's order. Under our transactional approach, all her pollution claims relate back to "the same transaction, event, or occurrence," Nwosun, 124 F.3d at 1257 (citations omitted),—the sale of the I-40 property. "Inasmuch as the doctrine of res judicata precludes parties from relitigating issues that were or could have been raised, parties cannot defeat its application by simply alleging new legal theories." Clark, 953 F.2d at 1238 (citations

omitted).  Here, the "transaction" was the sale, in bankruptcy, of the I-40

property.  Plotner's claims for relief, although now stated under new legal

theories, all ultimately relate to a claim that defendants' wrongdoing reduced the

price she received for that property—an issue squarely before the court in

Plotner I .

    4.  Full and Fair Opportunity to Litigate

For appellees' defense of res judicata to succeed, Plotner must have "had a

full and fair opportunity to litigate the claim in the prior suit."        Id. (citation

omitted). [4]  "Essential to the application of the doctrine of res judicata is the

principle that the previously unlitigated claim to be precluded could and should

have been brought in the earlier litigation."        D-1 Enters., Inc. v. Commercial

State Bank , 864 F.2d 36, 38 (5th Cir. 1989) (citing      Southmark Properties v.

Charles House Corp.  , 742 F.2d 862, 871 (5th Cir. 1984)).

Plotner's principal argument against res judicata, if that doctrine is

applicable to this proceeding, is that she could not have litigated her fraud claims

effectively due to fraud on the court.  She cites no authority for the proposition

that fraud on the court is an authority to allow a        collateral  attack on a

---

    [4]  Whether a full and fair opportunity to litigate is characterized as an
element of res judicata, or its absence an exception to the application of the
doctrine, see Yapp, 186 F.2d at 1227 n.4, is immaterial to the question of whether
there was such an opportunity in the instant case.

judgment—i.e., defeating the defense of res judicata— particularly considering that Fed. R. Civ. P. 60(b) provides for consideration of fraud on the court as grounds for  <u>direct</u> attack—i.e., obtaining relief from the court that issued the original judgment.   <u>See</u> Fed. R. Civ. P. 60(b)(3);  <u>In re Gledhill</u>, 76 F.3d at 1080-82.  More to the point, however, Plotner simply confuses causes of action for fraud (despite her apparent failure to advance any theory supporting a duty to disclose, in the absence of an allegation of affirmative misrepresentation) with fraud <u>on the court</u>.  The latter refers to misrepresentation directing affecting the judicial process, not simply the non-disclosure to one party of facts known by another.  <u>In re Tri-Cran, Inc.</u>, 98 B.R. 609 (D. Mass. 1989), cited by Plotner, is simply not analogous to this case, involving as it does allegations of actual corruption of the bankruptcy process itself.

Plotner also alleges that the bankruptcy court was not the appropriate place to litigate fraud, but the only authority she cites for this contention relates either to a procedural point,   <u>see</u> Robinson v. Tenantry (In re Robinson  ), 987 F.2d 665, 669 (10th Cir. 1993) (holding that a district court on review may not decide factual issues not addressed by the bankruptcy court), or, inexplicably, to the powers of Massachusetts probate courts.  Moreover, it is readily apparent that all of Plotner's claims in the instant proceeding, whether or not they are "core" proceedings under 28 U.S.C. § 157(b)(2), are, at a minimum, unmistakably

"related to" her bankruptcy proceeding, 28 U.S.C. § 157(c)(1), and therefore were amenable to initial hearing by the bankruptcy court subject to de novo review by the district court.

With respect to Plotner's contention that the Plotner I court lacked the power to grant damages relief for her claims, we note that Judge Alley, in refusing to dismiss as moot her claims against the Brown trustees, specifically contemplated and endorsed her ability to "pursue a claim for damages against the Browns." (II Appellant's App. at 516.)

Even if, viewing the facts in the light most favorable to Plotner, we conclude she lacked knowledge of facts that would have enabled her to litigate these particular claims at the time of the bankruptcy court's Plotner I order, it is uncontested that she had knowledge of them during the pendency of the Plotner I appeal in the district court, a fact that we conclude is fatal to her claim that she had no full and fair opportunity to litigate. While a reviewing court, in this case the district court considering the Plotner I appeal, generally may not decide factual issues that were not addressed by the bankruptcy court, see In re Robinson, 987 F.2d at 669, the district court could certainly have considered Plotner's fraud claims, had she raised them, as grounds for a good faith exception to the mootness doctrine. See, e.g., In re Abbotts Dairies of Penn., Inc., 788 F.2d 143, 147-48 (3d Cir. 1986) (stating that fraud obviates good faith under Bankr.

- 20 -

Code § 363(m)); Tompkins v. Frey (In re Bel Air Assocs., Ltd.), 706 F.2d 301, 305 n.11 (10th Cir. 1983) (same); In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978) (same). Instead, the district court in the Plotner I appeal explicitly found that "[a]ppellant does not assert that AT&T committed fraud in the purchase of the I-40 property," (II Appellant's App. at 513), despite the undisputed fact that Plotner had knowledge, prior to the filing of Judge Alley's Plotner I order, of all the facts she asserts support her claim of fraud. More importantly, we agree with the district court in this action that Plotner certainly had the opportunity to seek relief from the Plotner I order pursuant to Fed. R. Civ. P. 60(b)(2) or (3), which permit relief from a judgment based on, inter alia, "newly discovered evidence" and "fraud," respectively, yet did not do so within the limitations period of one year provided for by Rule 60(b). [5] If Plotner's contentions, all arising from the same transaction, had justified Rule 60(b) relief, the district court could certainly have remanded the case for further proceedings in bankruptcy court if necessary.

_____

[5] As discussed below, Plotner II was not a Rule 60(b)(2) or (3) motion challenging the Plotner I judgment within the same proceeding, but rather a new action commenced in district court seeking, in part, to invoke the court's ancillary jurisdiction to challenge the Plotner I judgment by means of an independent equitable action. See Plotner II, 1997 WL 234787, at *1-2; Crosby, 413 F.3d at 1275-76.

- 21 -

Plotner also contends that she "was prevented from presenting evidence which may have brought . . . to light" facts regarding the Brown Trust's knowledge of AT&T's release of pollutants, presumably in support of her argument that Plotner I did not present a full and fair opportunity to litigate her claims. (Appellant's Br. at 24.) However, the portions of the record cited in support of this proposition—chiefly excerpts from a June 13, 1994, hearing in Plotner I, as well as a September 1996 affidavit by alleged prospective buyer Warren Thomas—fail to reveal an effort by Plotner to introduce such evidence before the district court. Although it is true that Judge Lindsey, in the bankruptcy proceeding below in Plotner I, resolved Plotner's motion without hearing Thomas's testimony, review of the transcript portions cited indicates that Plotner sought to introduce that testimony only in support of a claim of a superior offer and never sought to introduce any evidence relating to claims of non-disclosure of contamination. Because the record belies the assertion that she sought to introduce such evidence, we must necessarily conclude that any action by the court prevented her from doing so.

Moreover, insofar as Plotner implies, in her reply brief, that she was precluded from raising claims for trespass based on the pollution of her property, such an insinuation appears to be raised for the very first time in a reply brief on appeal of her third action arising out of these events. The fact that plaintiff

- 22 -

chooses to advance, at this late date, a new theory of liability arising out of the same transaction does not suffice to obviate the application of the doctrine of res judicata. See Clark, 953 F.2d at 1238. Nor does this strategy persuade us that she lacked the opportunity to raise those theories in Plotner I.

5. Application of Res Judicata

Review of the numerous previous orders in this case compels a single conclusion: Neither a legal bar nor lack of knowledge precluded Plotner from pursuing her current claims before the bankruptcy or district court in Plotner I. She may have hoped for a more sympathetic forum by filing a separate civil action in the district court in Plotner II, but that court lacked original subject matter jurisdiction and declined to exercise its discretion to grant her Rule 60(b) relief pursuant to its ancillary jurisdiction over an independent equitable action attacking an earlier judgment. Thus, the doctrine of res judicata bars collateral attack on the judgment resolving claims that were or should have been brought in Plotner I.

**B. Application of Res Judicata in Bankruptcy Proceedings**

Plotner argues that the doctrine of res judicata is inapplicable because the instant action would have been a "non-core" action for purposes of the bankruptcy code if originally brought in bankruptcy court. Her argument is that because a bankruptcy court, without consent of the parties, cannot enter final

- 23 -

orders in non-core proceedings, see 28 U.S.C. § 157(c), the doctrine of res judicata is inapplicable to later actions that would have been non-core proceedings in the bankruptcy court. As noted, the bankruptcy court in Plotner III found that the instant action is a core proceeding, whereas the district court declined to reach the action's core or non-core status, instead concluding that the doctrine of res judicata applies to both classes of proceedings. After examining the applicable legal authorities, we adopt the approach of the district court.

The district courts (with power of referral to the bankruptcy courts) "have original and exclusive jurisdiction of all cases under title 11" (i.e. the bankruptcy code) and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b). Pursuant to referral under 28 U.S.C. § 157, bankruptcy courts have plenary jurisdiction over "core" bankruptcy proceedings, see 28 U.S.C. § 157(b), but in "non-core" proceedings may only, absent consent of the parties, see 28 U.S.C. § 157(c)(2), "submit proposed findings of fact and conclusions of law to the district court," which then enters any final order or judgment, 28 U.S.C. § 157(c)(1). See also Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.), 84 F.3d 1281, 1283-84 (10th Cir. 1996). Section 157(b)(2) provides a lengthy but non-exhaustive list of core proceedings, including "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A),

"orders approving the sale of property," 28 U.S.C. § 157(b)(2)(N), and "other proceedings affecting the liquidation of the assets of the estate," 28 U.S.C. § 157(b)(2)(O). Non-core proceedings are other matters "related to" the bankruptcy case, 28 U.S.C. § 157(c)(1), but not qualifying as core proceedings; "[a]ctions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings." Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990) (citing In re Wood, 825 F.2d 90, 96 (5th Cir. 1987)). [6]

The Seventh and Fifth Circuits have held that non-core proceedings in bankruptcy cannot be given res judicata effect, because under 28 U.S.C. § 157 bankruptcy courts cannot hear non-core proceedings absent consent of the parties without being subject to de novo review by the district court. See Barnett v. Stern, 909 F.2d 973, 978-79 (7th Cir. 1990); Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183, 189-90 (5th Cir. 1990); see also I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1548 n.8 (11th Cir. 1986) (stating in dicta that "if . . . a contempt proceeding were a non-core proceeding, the bankruptcy court could only issue proposed findings of fact and conclusions of law, which would be subject to de novo review by the district court, and such proposed

---

[6] As discussed below, because we agree with the district court that the core or non-core status of the instant proceeding is immaterial to the dispositive issue of res judicata, we decline to address the core/non-core distinction any further.

- 25 -

findings would not be entitled to res judicata effect in subsequent litigation because there would have been no final judgment on the merits" (citations omitted)). Barnett, 909 F.2d at 978 & n.7, reasoned that the provision of 28 U.S.C. § 157 for de novo district court review precludes a "full and fair opportunity to litigate" the issue in a non-core bankruptcy proceeding.

The district court in this case, however, rejected the Barnett approach in favor of the approach adopted by the Ninth, Sixth, and Second Circuits. See, e.g., In re Int'l Nutronics, Inc., 28 F.3d 965, 969-70 (9th Cir. 1994); Sanders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 483 (6th Cir. 1992); Sure-Snap Corp. v. State Street Bank & Trust Co., 948 F.2d 869, 873-77 (2d Cir. 1991). The most detailed explanation of the reasoning of these courts' holding that res judicata applies to non-core bankruptcy proceedings comes in In re International Nutronics, Inc., 28 F.3d at 969. There, the Ninth Circuit reasoned that although the bankruptcy court does not have the power to render a formal decision in non-core proceedings, it can nevertheless address the claim, which will eventually be decided by the district court. See id. at 969-70; see also 28 U.S.C. § 157(c)(1). As here, "the claim could have been asserted at the time of the proceeding confirming sale, and this opportunity is sufficient to satisfy that requirement of the doctrine of res judicata." Id. at 969 (citing Sanders, 973 at 483) (emphasis added).

Based on the policies underpinning the doctrine of res judicata, we agree with the reasoning of the Ninth Circuit in International Nutronics. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). Although the bankruptcy court cannot formally decide non-core matters absent consent, see 28 U.S.C. § 157(c)(2), such matters can be heard in bankruptcy court and eventually decided by the district court, as occurred here, see 28 U.S.C. § 157(c)(1). In our view, the Ninth Circuit is correct that the Fifth Circuit's approach elevates form over substance in concluding that res judicata should not apply to bar proceedings that would have been non-core in the initial bankruptcy case. See International Nutronics, 28 F.3d at 969. We therefore affirm the district court's adoption of the International Nutronics approach and discern no barrier to the application of the doctrine of res judicata to this case. As noted, because the bankruptcy court's Plotner I order was never vacated by the district court, and the district court's order was never contested but rather the appeal was voluntarily dismissed, Plotner I became a judgment on the merits for claim preclusion purposes. Therefore, we do not decide whether or not the instant claims would have constituted a core or non-core bankruptcy proceeding, since that determination has no effect on the dispositive issue of res judicata.

# IV

Plotner additionally argues the district court erred in denying her motion under Fed. R. Civ. P. 60(b).  We review a lower court's grant or denial of a Rule 60(b) motion for abuse of discretion.      See In re Gledhill  , 76 F.3d at 1080.  "Because a court has 'substantial discretion in connection with a Rule 60(b) motion,' '[w]e will reverse the district court's determination only if we find a complete absence of a reasonable basis and are certain that the district court's decision is wrong.'"    Id. (quoting   Pelican Prod. Corp. v. Marino    , 893 F.2d 1143, 1146 (10th Cir. 1990);    Johnston v. Cigna Corp.    , 14 F.3d 486, 497 (10th Cir. 1993)).

Although, as previously discussed, res judicata bars Plotner's attempted collateral attack on    Plotner I , that doctrine "does not apply to      direct  attacks on judgments."    Id. at 1082 (quoting    Watts v. Pinckney   , 752 F.2d 406, 410 (9th Cir. 1985)).  Such direct attacks come under the rubric of Fed. R. Civ. P. 60(b).         See id.  We conclude the district court did not abuse its discretion in denying this, Plotner's second attempt at a Rule 60(b) attack on        Plotner I .

Rule 60(b) provides, in relevant part, that a court may relieve a party from a final judgment under, inter alia, the following circumstances:

(3) fraud [,] . . . misrepresentation, or other misconduct of an adverse party . . . (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b)(3), (6).  Reason (3) has a one-year statute of limitations, whereas motions relying on reason (6) must merely be made within "a reasonable time."  Fed. R. Civ. P. 60(b).

Plotner did not file within a year for Rule 60(b)(3) relief in Plotner I .  She argues, however, that her district court fraud action ( Plotner II ) was filed within the relevant time period.  Review of Plotner II confirms that although it sought Rule 60(b) relief, it was not filed in Plotner I , but rather as an "independent equitable action."  Fed. R. Civ. P. 60(b) specifically distinguishes the two: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding."  Refusal to recognize the distinction between a Rule 60(b) motion in the original proceeding and an independent equitable action, with its unique restrictions, would provide an undue incentive for forum-shopping to litigants dissatisfied with a judgment. See Crosby , 413 F.2d at 1275-76.

As for Rule 60(b)(6), it may only be invoked as for causes not covered by another cause specifically enumerated in Rule 60(b)(1-5); otherwise, Rule 60(b)(6) would render the one-year limit applicable to Rule 60(b)(1-5) meaningless. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership , 507 U.S. 380, 393 (1993) (holding that the "provisions [of Rule 60(b)] are mutually exclusive, and thus a party who failed to take timely action due to

'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)" (citations omitted)); O'Dell v. Sun Refining & Mktg. Co., No. 99-5048, 2000 WL 339181, at **5 (10th Cir. March 31, 2000) ("Relief under 60(b)(6) is only appropriate when none of the first five clauses of the rule are applicable." (citations omitted)). Since Plotner's claims all unquestionably fall under Rule 60(b)(3) or, arguably, Rule 60(b)(2), Rule 60(b)(6) is inapplicable.

Because Rule 60(b) was not timely invoked, we come to the question of "independent action" relief from the judgment. Plotner has had a bite at this apple before. The district court rejected a materially identical claim in Plotner II, and a panel of this court affirmed. Like the panel considering the appeal in Plotner II, we see no compelling reason for granting independent equitable relief. See Plotner II, 1997 WL 234787, at *2. Judge Russell's Plotner II order is thorough and detailed, as is the bankruptcy court's order in Plotner III. We find absolutely nothing in the voluminous record before us that would suggest an abuse of discretion in refusing to take the extraordinary step of granting independent equitable relief from the judgment.

## V

In Plotner's reply brief, she proffers a wide variety of new allegations and arguments, including assertions of criminality and unethical attorney behavior.

Because these claims represent entirely new issues rather than responses to issues raised in appellees' response briefs, we decline to address them under our general rule that we do not consider issues raised for the first time in a reply brief.      See Lyons v. Jefferson Bank & Trust  , 994 F.2d 716, 724 (10th Cir. 1993).

## VI

In short, this case represents precisely the sort of repetitive litigation that the doctrine of res judicata aims to prevent.  Whatever the reasons, the record is clear that Plotner chose not to bring her pollution-related arguments in the initial Plotner I  bankruptcy and district court proceedings, despite her prior knowledge of the underlying facts.  Res judicata applies, and there is simply no exceptional reason to relieve her of the consequences of her prior litigation decisions.  Nearly eight years after the initial bankruptcy proceedings in this case, it is high time for this matter to come to an end.

The judgment of the district court is      **AFFIRMED** .