NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0338n.06

No. 17-1959

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| MARTIN H. LEAF, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jul 12, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | On Appeal from the United States |
| | ) | District Court for the Eastern |
| NICOLAS REFN, et al., | ) | District of Michigan |
| | ) | |
| Defendants-Appellees. | ) | |
| _____/ | | |

**BEFORE:   GUY, BATCHELDER, and GRIFFIN, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.**   In this diversity suit, plaintiff Martin Leaf claims that defendants violated a Michigan consumer protection statute by concealing anti-Semitic references in a motion picture, and by failing to notify audiences of that fact in the film's advertisements.  Leaf, who is an attorney, represented a client who made substantially similar claims in a state-court lawsuit.  That lawsuit was dismissed on the merits.  Finding our plaintiff to be in privity with the state-court plaintiff, the district court dismissed the case, citing res judicata.  We affirm, but on alternative grounds.

**I.**

In late 2011, the motion picture *Drive* was released in theaters nationwide. Leaf viewed an advertisement (or "trailer") for the movie, and as a result he viewed the movie itself. Sarah Deming also viewed the trailer and the movie at the same times as Leaf.

Using Leaf as her attorney, Deming filed a class-action lawsuit alleging violations of the Michigan Consumer Protection Act ("MCPA") and seeking injunctive relief. Deming never defined the class, and the state court never considered the putative class for certification. The amended complaint contained one count, which alleged that the defendants violated the MCPA by marketing the film in a way that concealed both the film's anti-Semitic nature and the film's slow, "art house" pace. The amended complaint did not allege that the film, standing alone, violated the MCPA. The complaint named two defendants: (1) CH Novi LLC, the company that operates the movie theater in Novi, Michigan, where Deming and Leaf saw the film; and (2) FilmDistrict Distribution, LLC, the film's domestic distribution company.

The Oakland County Circuit Court dismissed the case on the merits, holding that, even assuming that the movie contained anti-Semitism, the trailer was not deceptive or misleading simply because it did not contain every element of the movie. The circuit judge accepted the defendants' argument that the First Amendment precluded an MCPA violation on the grounds urged by Deming. The Michigan Court of Appeals affirmed without reaching the First Amendment defense, *Deming v. CH Novi, L.L.C.*, No. 309989, 2013 WL 5629814 (Mich. Ct. App. Oct. 15, 2013), and the Michigan Supreme Court denied leave to appeal, 845 N.W.2d 507 (Mich. 2014).

Leaf then filed a three-count amended complaint in the Eastern District of Michigan, based on diversity jurisdiction and naming several defendants involved in the film's production and

distribution (including one of the two defendants in Deming's lawsuit). In the amended complaint, Leaf alleged that (1) the movie, standing alone, violated the MCPA due to the subliminal nature of its anti-Semitism; (2) the trailer violated the MCPA for not disclosing the film's anti-Semitism; and (3) defendants conspired to violate the MCPA in these ways. As discussed more fully below, the district court held that Leaf's relationship with Deming as her attorney in the state-court lawsuit sufficed to bind Leaf under the doctrine of res judicata. The district court did not reach defendants' alternative arguments for dismissal.

## II.

We review de novo a district court's dismissal of a suit pursuant to Federal Rule of Civil Procedure 12(b)(6). *United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 407 (6th Cir. 2016). "Likewise, we review de novo a district court's application of the doctrine of res judicata." *Id.*

## III.

### A.      The State-Court Lawsuit Is Not Res Judicata

When evaluating whether a state-court judgment bars further claims in a federal court, "[f]ederal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Id.* at 414 (quoting *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007)). In Michigan, the doctrine of res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004) (citing *Sewell v. Clean Cut Mgt., Inc.*, 621 N.W.2d 222 (Mich. 2001)). The Michigan Supreme Court "has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from

the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

Here, on defendants' motion, the district court ruled that the instant case meets all three of Michigan's criteria for applying res judicata: (1) it was undisputed that the prior action was decided on the merits; (2) based on two unpublished Eastern District of Michigan cases and a Seventh Circuit case, Leaf was bound by the judgment against Deming by virtue of their attorney-client relationship; and, finally, (3) the differences between the allegations in the state and federal complaints were minor and/or cosmetic, such that the claims in the second case were, or could have been, resolved in the first.

Leaf disputes that he was in privity with Deming. Because we agree, we do not reach his claim that his lawsuit raises issues different from Deming's.

### 1.    Nonparty Preclusion

In Michigan,

> [t]o be in privity is to be so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert. The outer limit of the doctrine traditionally requires both [1] a "substantial identity of interests" and [2] a "working functional relationship" in which [3] the interests of the nonparty are presented and protected by the party in the litigation.

*Bates v. Twp. of Van Buren*, 459 F.3d 731, 734–35 (6th Cir. 2006) (quoting *Adair*, 680 N.W.2d at 396). Although federal courts apply state courts' res judicata rules where a state-court judgment is concerned, there are due-process "limits on a state court's power to develop estoppel rules," which "reflect the general consensus in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Richards v. Jefferson Cty.*, 517 U.S. 793, 798

(1996) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). Specifically, "there are clearly constitutional limits on the 'privity' exception" to the general rule that only parties are bound by a judgment.[1] *Id.*

The Supreme Court has delineated six exceptions to the rule that a judgment cannot bind a nonparty, all of which are grounded in due process. Those exceptions are as follows:

1. The nonparty agreed to be bound by the action;
2. There is a pre-existing "substantive legal relationship" between the party and the nonparty, such as preceding and succeeding owners of property;
3. The nonparty was "adequately represented" by someone with the same interests who was a party to the suit (for example, in a properly conducted class action);
4. The nonparty assumed control over the litigation, such that he or she had the opportunity to present proofs and argument;
5. The nonparty is attempting to relitigate the prior lawsuit as the bound party's designated representative; or
6. A special statutory scheme applies (e.g., bankruptcy, probate).

*Taylor v. Sturgell*, 553 U.S. 880, 893-95 (2008). It is undisputed that the first and last of these justifications for nonparty preclusion do not apply to this case.

Because res judicata is an affirmative defense, the defendant bears the burden to show an entitlement to res judicata. *Id.* at 906-07.

---

[1] Although the parties to the instant case use the shorthand "privity" to describe when nonparty preclusion is available, the term "privity" tends to describe the "substantive legal relationship" basis for nonparty preclusion, *see infra*, in particular. Moreover, the term "privity" in this context is used more broadly than it is elsewhere in the law, and for these reasons, the Supreme Court has cautioned against its usage. *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 894 n.8 (2008).

### a.      Substantive legal relationship

"[N]onparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment." *Id.* at 894. "Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." *Id.* (citing Restatement (Second) of Judgments §§ 43-44, 52, 55). "These exceptions originated 'as much from the needs of property law as from the values of preclusion by judgment.'" *Id.* (quoting 18A Wright & Miller, Fed. Practice & Procedure § 4448 (2d ed. 2002)).

Although the district court's ruling relies on the fact of Leaf and Deming's previous attorney-client relationship, this relationship does not relate to property law; rather, as the district court implied, the significance of Leaf and Deming's attorney-client relationship is best discussed within the "adequate representation" framework of establishing nonparty preclusion, *infra*. *See also* 6/20/2017 Tr. at 40:1-6 ("Leaf as Deming's [c]ounsel represented her legal rights in the State Court action . . . .").

### b.      Adequate representation

In certain limited circumstances, a nonparty may be bound by a judgment when he or she was "adequately represented by someone with the same interests who was a party" to the earlier suit. *Richards*, 517 U.S. at 798. Michigan's preclusion rule is slightly more restrictive than due process necessitates, requiring "both a 'substantial identity of interests' and a 'working functional relationship' in which the interests of the nonparty are presented and protected by the party in the litigation." *Bates*, 459 F.3d at 734–35 (quoting *Adair*, 680 N.W.2d at 396).

Defendants argue that these criteria were met in Deming's state-court suit: Deming shared an identity of interests with Leaf, because both sought effectively the same injunction on the same

grounds; and Deming adequately represented Leaf by advocating for him and the rest of the putative class members. The district court agreed, holding that Leaf was in privity with Deming by virtue of their attorney-client relationship. In support, she cited *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986); *Wallace v. JP Morgan Chase Bank, N.A.*, No. 13-13862, 2014 WL 4772029 (E.D. Mich. Sept. 24, 2014) (Roberts, J.), *aff'd as modified sub nom. Wallace v. JPMorgan Chase Bank, N.A.*, 628 F. App'x 940 (6th Cir. 2015); and *Lintz v. Credit Adjustments, Inc.*, No. 07-11357, 2008 WL 835824 (E.D. Mich. Mar. 28, 2008). Also relevant is *Plotner v. AT & T Corp.*, 224 F.3d 1161 (10th Cir. 2000), which *Wallace* and *Lintz* cited.

But each of these cases is distinguishable from our case for the same basic reason: the attorneys in these cases were added as defendants because of their roles in their clients' alleged wrongdoing.[2] Insofar as they worked hand-in-glove to accomplish separate, allegedly unlawful aspects of a particular task (such as a foreclosure), attorney and client had a substantial identity of interests—limited to the conduct at issue in the case, *see, e.g.*, *Plotner*, 224 F.3d at 1169 ("The law firm defendants appear *by virtue of their activities as representatives* of [their clients], . . . creating privity." (emphasis added)); *Wallace*, 2014 WL 4772029, at *5 ("[A]s Chase's foreclosure counsel and counsel for the October 2009 Assignment, Orlans and Isaacs are in privity with Chase."); *Lintz*, 2008 WL 835824, at *4 ("[A]s the legal representative . . . , it was in privity with the interests of its client *as they relate to the transaction in question*." (emphasis added)).

---

[2] In *Plotner*, *Henry*, and *Wallace*, attorneys were added to a second lawsuit for allegedly helping their clients commit fraud that was alleged, or could have been alleged, against the clients in the first lawsuit. In *Lintz*, the attorneys were added to a second lawsuit for allegedly helping their clients violate the Fair Debt Collection Practices Act. In each case, the client was a defendant in the earlier lawsuit and either prevailed or, in *Lintz*, negotiated a dismissal of the claims against it. The attorneys were then given the benefit of res judicata as to their role in their clients' alleged wrongdoing.

By contrast, the core activity at issue in the instant case—the production and marketing of a film—does not relate to Leaf and Deming's actions as an attorney-client team, and Leaf's mere representation of Deming does not necessarily demonstrate an alignment of interests. Although Leaf and Deming might know each other socially, their initial relationship as attorney and client does not encompass, or relate to, their interests in the underlying lawsuits. In order to represent Deming, Leaf did not need to share her beliefs about the film *Drive*, or even believe that she was likely to succeed in the lawsuit. The fact that Leaf does think these things is a coincidence that does not necessarily bar him from bringing a similar lawsuit on his own behalf. *Taylor* teaches that an identical cause of action, directed to the same defendant by two different plaintiffs, does not establish an alignment of interests between the plaintiffs. *Taylor*, 553 U.S. at 904-05.

In addition to Leaf lacking a substantial identity of interests with Deming, there is no indication that Deming adequately "presented and protected" Leaf's interests. Even if we presume Leaf was satisfied with his own performance in the state-court lawsuit, the proper inquiry is whether Deming protected Leaf's interests—not whether Leaf surreptitiously protected his own interests while acting as Deming's fiduciary. By resting its ruling on the conclusion that "Leaf as Deming's [c]ounsel represented *her* legal rights in the State Court action," the district court erred. 6/20/2017 Tr. at 41:1-6 (emphasis added). Notwithstanding his own views on strategy, Leaf might have operated within strictures set by Deming. *See* Mich. R. Prof. Conduct § 1.4 cmt. ("The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued . . . ."). Or Deming might have been a difficult client whose communication style prevented Leaf from preparing the briefing as he would have preferred. Hypotheticals aside, it is defendants' burden to show that Deming adequately represented Leaf's interests. Instead, defendants appear to presume that a

finding of adequate representation necessarily follows, as a matter of law, from the fact that Leaf was Deming's attorney.  It does not.

Finally, although defendants emphasize that Deming styled her state-court lawsuit as a class action, that does not mean Deming adequately represented the interests of those in the putative class, including Leaf.  The amended state-court complaint does not describe the boundaries of the class; Deming's request for class certification was perfunctory; we are not aware of any motions or proceedings in furtherance of class certification; and a representative only has authority to bind nonparty class members upon "judicial approval of designation of the action as a class suit and of the representative's status as such."  Restatement (Second) of Judgments, § 41 cmt. e.[3]  And, although Leaf had notice of Deming's lawsuit, mere notice is not sufficient to establish adequate representation.  *See Richardson*, 517 U.S. at 801.

### c.      Nonparty control over the litigation

*Taylor* recognizes that a nonparty who "assumed control over" the prior litigation may be bound by res judicata.  553 U.S. at 895.  "Because such a person has had 'the opportunity to present proofs and argument,' he has already 'had his day in court' even though he was not a formal party to the litigation."  *Id.* (quoting Restatement (Second) of Judgments, § 39 cmt. a).  Defendants allege that Leaf used Deming as his "puppet," controlling her litigation.

Whether Leaf assumed control over Deming's litigation is a question of fact, and defendants do not elaborate on why they believe Deming was Leaf's "puppet."  *See* Restatement (Second) of Judgments, § 39 cmt. c ("Whether his involvement in the action is extensive enough to constitute control is a question of fact . . . .").  Furthermore, the Restatement (Second) of

---

[3] The Supreme Court routinely relies on the Restatement (Second) of Judgments in fashioning its res judicata jurisprudence.  *See, e.g.*, *Taylor*, 553 U.S. at 895; *Richardson*, 517 U.S. at 798.

Judgments distinguishes between one who controls the litigation and that person's attorney, stating, "It is sufficient that the choices were in the hands of *counsel responsible to the controlling person* . . . . It is not sufficient, however, that the person merely contributed funds or advice in support of the party, [or] supplied counsel to the party . . . ." *Id.* (emphasis added). This suggests that an attorney-client relationship does not automatically qualify for this basis for nonparty preclusion.

Defendants offer an out-of-circuit case applying New York law, *Ferris v. Cuevas*, 118 F.3d 122 (2d Cir. 1997), for the proposition that when a plaintiff in the first case represents the client in the second case, the first case is res judicata. This argument fails for several reasons. First, as an out-of-circuit case applying New York law, *Ferris* is not binding on this Court. It is also inapposite to this case, because *Ferris* did not discuss the due-process dimensions of nonparty preclusion. And, unlike the instant case, the appellants in *Ferris* made a crucial concession, having "admitted that their interest [was] identical to that of the prior plaintiffs and, thus, was represented in that action." *Id.* at 128. Furthermore, *Ferris* principally relied on *Ruiz v. Commissioner of Department of Transportation*, 858 F.2d 898 (2d Cir. 1988). *Ruiz* applied nonparty preclusion in large part because "the two parties had had the same attorney," *Ferris*, 118 F.3d at 127. But the plaintiffs in *Taylor* shared an attorney, too—yet the Supreme Court gave no weight to that fact when it reversed the lower courts' finding of res judicata. *See also Taylor*, 553 U.S. at 901 (rejecting "a diffuse balancing approach to nonparty preclusion" in favor of "crisp rules with sharp corners" (second quote from *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 881 (6th Cir. 1997))). *Taylor* implicitly overruled *Ruiz*, calling *Ferris*'s reasoning into doubt.

### d.        Leaf as Deming's representative or agent

Under the fifth category outlined in *Taylor*, nonparty preclusion may occur "because a nonparty to an earlier litigation [i.e., Leaf] has brought suit as a representative or agent of a party who is bound by the prior adjudication [i.e., Deming]." *Taylor*, 553 U.S. at 905. Although Leaf might have been Deming's agent during the state-court action, defendants have not offered any argument that he is acting as her agent in this lawsuit, and he has not purported to sue in a representative capacity. At most, defendants allege that Deming was *Leaf*'s agent in the state lawsuit. Under *Taylor*, that is not relevant even if it is true.[4]

### 2.        The Claims in This Case Were, Or Could Have Been, Resolved in State Court

Because we hold that applying the judgment against Deming to bind Leaf on the basis of their relationship would violate due process, we need not reach whether Leaf's claims were, or could have been, resolved in the state-court action.

### 3.        The State Court Opinion

Leaf argues that applying the doctrine of res judicata to his case would violate due process because the state court opinion was itself anti-Semitic. Because we conclude that preclusion is inappropriate, we need not reach this argument.

### B.        The Merits

Before the district court, defendants argued that Leaf failed to plead a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, that the film and related advertising is protected speech under the First Amendment, which the MCPA may not

---

[4] The *Taylor* Court remanded for further factfinding on this point. In this case, however, we decline to remand because (1) defendants do not sufficiently allege that res judicata applies on this basis; and (2) the issue is moot, *see infra*.

regulate.   Although the district court did not reach these issues, they were raised below and we may reach them as alternative grounds for affirmance.  *Katt v. Dykhouse*, 983 F.2d 690, 695 & n.3 (6th Cir. 1992).

As the Michigan Court of Appeals noted in *Deming*, whether the First Amendment protects "subliminal" speech from state regulation is only relevant if a plaintiff first states a claim under the MCPA.  *See Deming*, 2013 WL 5629814, at *2 ("[P]laintiff cannot state a claim simply based on the movie's alleged lack of protection under the First Amendment.").   Accordingly, we first evaluate defendants' Rule 12(b)(6) argument.

Leaf brings his claims under Mich. Comp. Laws § 445.903(1)(s) and (cc), which provide as follows:

> (1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:
>
> > . . . .
>
> > (s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer. . . .
>
> > . . . .
>
> > (cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

In Count I of the amended complaint, Leaf asserts that defendants violated subsection (1)(s) because the film itself contains anti-Semitic messaging, which defendants concealed from the casual viewer using a variety of tactics within the film.  *See* Am. Compl. ¶¶ 72.  Concerning this subsection, defendants make two arguments.  They state that whether the film *Drive* was anti-Semitic is Leaf's "idiosyncratic interpretation," not a "material fact" as required by the statute.

They also state that the alleged anti-Semitism necessarily did not "tend[] to mislead or deceive the consumer," because Leaf immediately recognized the anti-Semitism despite its allegedly subliminal nature.

Accepting Leaf's allegations as true, we find defendants' second argument persuasive. Leaf concedes that the allegedly anti-Semitic content was immediately apparent to him "upon first viewing." Am. Compl. ¶ 70; *see also id.* ¶¶ 67-69 ("Upon viewing *Drive*, [p]laintiff noticed that the film *Drive* was anti-Semitic."). He alleges that "the anti-Semitic messages would not be understood to be anti-Semitic by the vast majority of viewers," but this assertion is unsupported by factual allegations. *Id.* ¶ 69. Even if Leaf adequately alleged that other viewers might not notice the alleged anti-Semitism, Leaf himself must experience an injury caused by the film, but he admits that he was not misled.

In Count II, Leaf asserts that defendants violated subsection (1)(cc) by producing, circulating, and showing a trailer for the film that "gave no indication that *Drive* . . . promoted anti-Semitism." Am. Compl. ¶ 152. Concerning this subsection, defendants argue that the alleged lack of anti-Semitism in the film's trailer cannot meet the statutory requirement that the offending representations of fact be "made in a positive manner." "Because the trailer does not affirmatively represent that *Drive* does not . . . promote anti-Semitism," defendants claim that the requisite "positive" misrepresentation is lacking. We agree.

"[I]t is proper to construe the provisions of the MCPA 'with reference to the common-law tort of fraud.'" *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999) (quoting *Mayhall v. A. H. Pond Co., Inc.*, 341 N.W.2d 268 (Mich. Ct. App. 1983)). "This is consistent with [Mich. Comp. Laws §] 445.903(1)(cc), which refers to a failure to reveal material transactional facts 'in light of representations of fact made in a positive manner.'" *Collins v. A1 Motors, LLC*,

No. 330004, 2017 WL 1190932, at *7 (Mich. Ct. App. Mar. 28, 2017). In *Collins*, the Michigan Court of Appeals held that a car dealer's statements that a car was "a very good vehicle" and that it "had some maintenance done" were insufficient to sustain an MCPA claim when the car turned out to be faulty. *Id.* The court contrasted these statements with a hypothetical statement "that the [car]'s spark plugs were replaced without saying anything more, thereby suggesting that this was the only repair," even though more repairs were performed. *Id.* at *7 n.12. Such a suggestion would have been affirmatively misleading as to that car's actual, more extensive repair history.

Even assuming that the film contained anti-Semitic messaging, Leaf makes no allegation that the trailer made affirmative representations suggesting that the opposite was true. *Cf. Deming*, 2013 WL 5629814, at *2 ("[T]he trailer certainly does not affirmatively suggest that all the 'bad guys' are non-Jews or that the movie puts Jews in a favorable or even neutral light."). Rather, he alleges only that "[t]here were no indications in the trailer that *Drive* was anti-Semitic, and/or promoted anti-Semitism." Am. Compl. ¶ 63. This type of allegation is insufficient to state a claim under Mich. Comp. Laws § 445.903(1)(cc).

Finally, in Count III, Leaf claims that defendants committed a civil conspiracy in connection with the allegations described in Counts I and II. Because Leaf failed to state a claim upon which relief could be granted as to any section of the MCPA, the derivative conspiracy claim is also dismissed, and we need not reach defendants' First-Amendment defenses.

AFFIRMED.