**U.S. TRUCK COMPANY, INC., a Michigan corporation; and Central Cartage Co., a Michigan corporation, and C.C. Southern, Inc., a Michigan corporation, et al., Plaintiffs,**

v.

**NATIONAL AMERICAN INSURANCE COMPANY, a Nebraska corporation, et al., Defendants.**

**No. CIV–98–387–M, CIV–98–392–M.**

United States District Court,
W.D. Oklahoma.

Feb. 11, 2002.

Steven M. Potter, Potter, Carniak, Anderson & DeAgostino, Auburn Hills, MI, for W. Brent Lagere.

J. Edward Barth, Shelia D. Tims, Andrews, Davis, Legg, Bixler, Milsten & Price, Oklahoma City, OK, David A. Domina, W. Craig Howell, Domino & Copple, Omaha, NE, Marilyn A. Peters, Dykena Gossett, Bloomfield Hills, MI, for PlaintiffsKenneth N. McKinney, Mary E. Nelson, Robert L. Roark, McKinney & String-er PC, Oklahoma City, OK, Dennis M. Goebel, Harvey & Kruse, Troy, MI, for Defendants.

## ORDER

LaGRANGE, District Judge.

Before the Court is defendants' Joint Motion for Summary Judgment and Alternative Motion to Dismiss Plaintiffs' Claims, filed December 23, 1997. On February 5, 1998, plaintiffs filed their Joint Brief in Opposition to Defendants' Joint Motion and Brief in Support of Summary Judgment and Alternative Motion to Dismiss Plaintiffs' Claims. On February 18, 1998, defendants filed their joint reply, and on June 5, 1998, defendants filed their Joint Supplement to Motion for Summary Judgment and Alternative Motion to Dismiss Plaintiffs' Claims. Upon review of the parties' submissions, the Court makes its determination.

### I. Introduction

Plaintiffs are in the business of interstate and intrastate motor carrier transportation. From 1987 through early September 1992, CenTra, Inc. ("CenTra") and certain subsidiaries and affiliates were insured through policies and insurance fronting agreements issued originally by National American Insurance Company ("NAICO") and later by NAICO and NAICO Indemnity Caymen, Ltd. ("NAICO Indemnity"). On July 10, 1992, CenTra filed a "Complaint for Injunctive, Declaratory Relief and Monetary Damages" in the Circuit Court for Macomb County, Michigan, against NAICO, Brent LaGere, Ben Walkingstick and John Doe(s), alleging claims of failure to comply with statutory requirements, breach of insurance contract, breach of contract, retaliatory cancellation, tortious interference with business relationships, and tortious interference with business expectancy arising from defen-

dants' issuance of notice of intent to cancel CenTra's and plaintiffs' insurance policies on July 2, 1992 ("Cancellation Case"). Effective July 2, 1992, plaintiffs assigned to CenTra their claims against defendants for alleged wrongful notice of insurance cancellation.[1] Plaintiffs assigned their unlawful insurance cancellation claims to CenTra so CenTra could prosecute its own claim and plaintiffs' claims, as assignee.

On July 16, 1992, the Cancellation Case was removed to the United States District Court for the Eastern District of Michigan, Southern Division. On October 13, 1992, the Cancellation Case was transferred to the United States District Court for the Western District of Oklahoma. On October 23, 1992, CenTra filed a motion for leave to amend its complaint to add NAICO Indemnity as a defendant.[2]

On August 29, 1994, CenTra filed a second motion for leave to amend its complaint in numerous respects, including adding the following statement to paragraph 11: "CenTra brings this action on its own behalf and as assignee on behalf of its subsidiaries and affiliates." On September 26, 1994, defendants filed an objection to CenTra's motion to amend on the grounds that the proposed amended complaint is too late and prejudicial because (a) it was filed over two years after the lawsuit was commenced; (b) the additional facts were known to CenTra at the time the lawsuit was commenced in 1992 and not included in the complaint; (c) discovery cut-off would occur within 30 days, and there would not be a sufficient time to discover facts regarding the representative capacity allegation; (d) the motion to amend came only after defendants' motion for summary judgment raised issues regarding CenTra's

inability to prove damages of its own, and (e) Mr. Harned, CenTra's designated corporate representative, cannot even identify a written assignment supporting the allegation in his deposition. On July 9, 1996, based upon the briefs of the parties, the Court denied CenTra's motion for leave to amend its complaint and ruled that no further amendments to the pleadings should be allowed absent extraordinary circumstances.

On January 31, 1997, CenTra's case was consolidated with a pending case in the Western District of Oklahoma asserting other claims against NAICO related parties (the consolidated cases to be referred to as "the Oklahoma litigation"). On February 3, 1997, defendants filed a motion in limine to prohibit any evidence referring to damages sustained by non-parties, in view of the court's previous rulings denying CenTra's attempt to amend its complaint to assert such claims and because CenTra was not the real party in interest to assert the claims of its subsidiaries or any other named insured. On approximately February 12, 1997, the Court sustained defendants' motion in limine. On April 22, 1997, the Court entered judgment in the Oklahoma litigation granting judgment to defendants in the Cancellation Case as a matter of law.

Following the trial of the Oklahoma litigation, CenTra filed a motion for new trial regarding its insurance cancellation claims, as well as other post-trial motions. On March 10, 1998, the Court denied the motion for new trial. On or about March 23, 1998, CenTra filed a notice of appeal. On September 7, 2000, the United States Court of Appeals for the Tenth Circuit

---

1. Although plaintiffs had assigned their claims to CenTra on July 2, 1992, CenTra failed to allege in the Complaint in the Cancellation Case that it was bringing claims on behalf of plaintiffs as their assignee.

2. CenTra, however, made no attempt in that motion to add allegations regarding CenTra's status as assignee for plaintiffs.

entered an order and judgment affirming this Court's rulings.

On September 16, 1997, plaintiffs filed amended complaints against defendants in Macomb County Circuit Court. The amended complaints allege claims of breach of contract, tortious interference with business relationships, tortious interference with business expectancy, and fraud and misrepresentation arising out of defendants' issuance of notice of intent to cancel CenTra's and plaintiffs' insurance policies on July 2, 1992. On August 28, 1997, CenTra reassigned plaintiffs' claims to plaintiffs. The reassignments state: "CenTra, Inc. does hereby reassign all claims, suits, actions or demands previously assigned to it by any of the [plaintiffs]." On October 21, 1997, the cases were removed to the United States District Court for the Eastern District of Michigan, Southern Division. On March 17, 1998, the cases were transferred to the United States District Court for the Western District of Oklahoma.[3]

Defendants request the Court enter summary judgment in their favor and against all plaintiffs on all claims in these consolidated cases because they are barred by the doctrine of res judicata (claim preclusion). In the alternative, defendants request the Court dismiss all of plaintiffs' claims for failure to state a claim upon which relief can be granted.

## II. Discussion

■ "Res judicata, or claim preclusion, precludes a party or its privies from relitigating issues that were or could have been raised in an earlier action, provided that the earlier action proceeded to a final judgment on the merits." *King v. Union*

*Oil Co. of California,* 117 F.3d 443, 445 (10th Cir.1997)(internal citations omitted). The fundamental policies underlying res judicata are judicial economy, finality, preventing repetitive litigation and forum shopping, and the interest in bringing litigation to an end. *Plotner v. AT & T Corp.,* 224 F.3d 1161, 1168 (10th Cir.2000).

■ To apply the doctrine of res judicata, the following elements must be satisfied: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action, and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit.[4] *Plotner,* 224 F.3d at 1168, *Nwosun v. General Mills Rests., Inc.,* 124 F.3d 1255, 1257 (10th Cir. 1997), *cert. denied,* 523 U.S. 1064, 118 S.Ct. 1396, 140 L.Ed.2d 654 (1998).

### A. Judgment on the Merits

The parties do not dispute that the "judgment on the merits" requirement is satisfied. The Oklahoma litigation concluded with a judgment entered on April 22, 1997. In paragraph 20 of that Judgment, the Court states:

20. As announced from the bench on April 2, 1997, and entered by Order dated April 15, 1997, the Court granted judgment as a matter of law in favor of Defendants National American Insurance Company, W. Brent LaGere and Benjamin T. Walkingstick, and against Plaintiff CenTra, Inc. on Plaintiff's Sixteenth, Seventeenth and Eighteenth claims for wrongful notice of cancellation, breach of contract and tortious interference with business relationships.

---

3. The cases have since been consolidated.

4. "A full and fair opportunity to litigate" is not always considered an actual element of res judicata, but rather "an exception to the

application of claim preclusion when the [first] three referenced requirements are otherwise present." *Yapp v. Excel Corp.,* 186 F.3d 1222, 1227 n. 4 (10th Cir.1999).

Judgment in Case No. CIV–92–1301–M, consolidated with Case No. CIV–93–437–M. On September 7, 2000, the Tenth Circuit affirmed the grant of judgment as a matter of law on the insurance cancellation claims. Accordingly, the Court finds the Oklahoma litigation, the prior suit, ended with a judgment on the merits.

### B. Identity or Privity of Parties [5]

Since plaintiffs were not parties of record in the Oklahoma litigation, the Court must determine if privity exists between CenTra and plaintiffs. "There is no definition of 'privity' which can be automatically applied to all cases involving the doctrines of res judicata and collateral estoppel, since privity depends upon the circumstances." *Satsky v. Paramount Communications, Inc.*, 7 F.3d 1464, 1468–69 (10th Cir.1993)(internal quotations and citations omitted). Privity has been found to exist in the following relationships: concurrent relationship to the same property right, successive relationship to the same property or right, or representation of the interests of the same person. *Lowell Staats Mining Co., Inc. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir.1989)(internal citation omitted). Further, privity has been defined as follows:

> privity denotes mutual or successive relationship to the same right of property, so that a privy is one who, after the commencement of the action, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, purchase, or assignment. There is privity within the meaning of the doctrine of res judicata where there is an identity of interest and privity in estate, so that a judgment is binding as to a subsequent grantee, transferee, or lienor of property. This is in harmony with the view that a judgment

is binding on privies because they are identified in interest, by their mutual or successive relationship to the same rights of property which were involved in the original litigation.

*St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp.*, 605 F.2d 1169, 1175 (10th Cir.1979)(quoting 46 Am.Jur.2d, Judgments, § 532, pp. 684, 685).

In federal diversity cases, such as the instant matter, state law is generally used to determine whether there is privity. *See Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 386 (10th Cir.1987); *Lowell Staats*, 878 F.2d at 1274. Under Oklahoma law, "[i]n order for the 'privity' rule to apply, the party in privity must actually have the same interest, character, or capacity as the party against whom the prior judgment was rendered." *Hildebrand v. Gray*, 866 P.2d 447, 450–51 (Okla.Ct.App. 1993). Generally, "privity involves a person so identified in interest with another that he represents the same legal right." *Hildebrand*, 866 P.2d at 451 (internal quotations and citation omitted). *See also Greco v. Foster*, 268 P.2d 215, 220 (Okla. 1954)("The term 'Privity' denotes successive relationship or ownership of the same property from a common source.").

In the case at bar, the Court finds plaintiffs are in privity with CenTra. On July 2, 1992, prior to the Cancellation Case being filed, plaintiffs assigned to CenTra their claims against defendants for alleged wrongful notice of insurance cancellation. CenTra was the assignee of plaintiffs' claims throughout the litigation of the Cancellation Case. On August 28, 1997, after judgment was entered in the Oklahoma litigation, CenTra reassigned plaintiffs' claims that had been transferred to CenTra back to plaintiffs. Accordingly, the Court finds plaintiffs are successors in

---

**5.** There is no dispute that defendants were parties in the Oklahoma litigation.

interest to plaintiffs' claims against defendants for alleged wrongful notice of insurance cancellation, and, therefore, are in privity with CenTra.[6]

Plaintiffs, however, assert their interests were not represented in the Oklahoma litigation because the Court expressly prohibited any such representation. Plaintiffs state CenTra reassigned plaintiffs' unlitigated insurance cancellation case claims back to plaintiffs, but did not assign CenTra's own insurance cancellation claims. Plaintiffs conclude they are not successors in interest to the litigated claims and therefore assert there is no privity. However, as discussed fully in subsection II(D), the Court finds CenTra could have brought plaintiffs' claims in the Oklahoma litigation. Accordingly, the Court finds plaintiffs are, in fact, successors in interest to claims that could have been brought in the Oklahoma litigation and are in privity with CenTra.

### C. Same Cause of Action

The Tenth Circuit has adopted the "transactional approach" in analyzing the "same cause of action" element of res judicata. *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1169 (10th Cir.2000). The "transactional approach" provides:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, and whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*May v. Parker–Abbott Transfer and Storage, Inc.*, 899 F.2d 1007, 1009–10 (10th Cir.1990)(internal quotations and citations omitted). "It is the occurrence from which the claims arose that is central to the 'cause of action' analysis." *Nwosun v. General Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir.1997). "[E]ven when there is not a substantial overlap [of the witnesses or proofs in the two actions], the second action may be precluded if it stems from the same transaction or series." *Petromanagement Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329, 1336 (10th Cir.1988)(internal quotations and citations omitted).

Applying the "transactional approach," the Court finds the "same cause of action" requirement is met. The factual basis for the Cancellation Case and the factual basis for the claims plaintiffs are presenting in these consolidated cases is identical—the issuance of notice of cancellation by defendants, allegedly resulting in damages incurred by CenTra and plaintiffs. The identical factual basis is further demonstrated by a review of the complaint filed in the Cancellation Case and the com-

---

**6.** The Court would reach the same conclusion if Michigan law were applied. The Michigan courts have defined privity in similar terms as the Oklahoma courts. Privity has been defined as "mutual or *successive* relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right" and as "one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, *succession* or purchase." *Sloan v. City of Madison Heights*, 425 Mich. 288, 389 N.W.2d 418, 422 (1986)(internal quotations omitted)(emphasis added).

plaints filed in these consolidated cases; the complaints are virtually identical, including the exhibits attached to each complaint. Additionally, the Court finds the facts are related in time, space, origin, and motivation; the basis of the Cancellation Case and these consolidated cases arise out of the exact same occurrence, defendants' issuance of notice of cancellation. Finally, the Court finds CenTra's claims and plaintiffs' claims, if brought together, would form a convenient trial unit.

### D. Full and Fair Opportunity to Litigate

■ For res judicata to apply, the party must have had a full and fair opportunity to litigate the claim in the prior suit. "Essential to the application of the doctrine of res judicata is the principle that the previously unlitigated claim to be precluded could and should have been brought in the earlier litigation." *Plotner v. AT & T Corp.*, 224 F.3d 1161, 1170 (10th Cir.2000)(internal quotations and citations omitted). "The fairness of the process is determined by examining any procedural limitations, the party's incentive to fully litigate the claim, and whether effective litigation was limited by the nature or relationship of the parties." *Nwosun v. General Mills Rests., Inc.*, 124 F.3d 1255, 1257–58 (10th Cir.1997).

Plaintiffs' primary argument against the application of res judicata is that their claims could not have been litigated in the Oklahoma litigation because this Court prohibited CenTra's representation of plaintiffs' claims. Plaintiffs state CenTra was precluded from proving any claims plaintiffs seek to assert in the instant case by the sustaining of defendants' motions in limine and objections in the Oklahoma litigation. Plaintiffs assert that this Court limited the scope of the Oklahoma litigation to only CenTra's claims, that this Court expressly declined to consider plain-

tiffs' claims, and that plaintiffs have had no opportunity to litigate their claims.

■ A review of the record of the Oklahoma litigation, however, reveals plaintiffs' claims could have been brought in the Oklahoma litigation were it not for the conduct of CenTra in failing to timely assert plaintiffs' claims. In the Oklahoma litigation, more than two years after the date of the assignment and the original filing of the lawsuit and less than 30 days prior to discovery cut-off, CenTra attempted to amend its complaint to specifically assert claims on behalf of plaintiffs, as their assignee. The Court denied CenTra leave to amend its complaint due to the untimeliness of CenTra's motion.

■ Denial of leave to amend does not negate an otherwise valid defense of res judicata, particularly when that denial is premised upon the party's own dilatory conduct. *See King v. Hoover Group, Inc.*, 958 F.2d 219, 222–23 (8th Cir.1992)("It is well settled that denial of leave to amend constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading"); *Johnson v. SCA Disposal Servs. of New England, Inc.*, 931 F.2d 970 (1st Cir.1991); *Petro-management Corp. v. Acme–Thomas Joint Venture*, 835 F.2d 1329, 1334 (10th Cir. 1988); *Interstate Pipe Maintenance, Inc. v. FMC Corp.*, 775 F.2d 1495 (11th Cir. 1985); *Olmstead v. Amoco Oil Co.*, 725 F.2d 627 (11th Cir.1984); *Nilsen v. City of Moss Point, Mississippi*, 701 F.2d 556, 563 (5th Cir.1983)("both courts and commentators agree that theories which were the subject of an untimely motion to amend, filed in the earlier action, 'could have been brought' there"); *Isaac v. Schwartz*, 706 F.2d 15 (1st Cir.1983); *Poe v. John Deere Co.*, 695 F.2d 1103, 1107 (8th Cir.1982)("it is immaterial that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to

do so because they were not alleged in the complaint and an application to amend the complaint came too late").

Accordingly, the Court finds this Court's denial of leave to amend CenTra's complaint in the Oklahoma litigation to add plaintiffs' claims as assignee does not prevent the application of res judicata. The Court further finds plaintiffs' claims could have been brought by CenTra in the Oklahoma litigation. Thus, the Court finds plaintiffs had a full and fair opportunity to litigate their claims in the Oklahoma litigation.

### III. Conclusion

As set forth above, all four requirements of res judicata are met in these consolidated cases. Therefore, the Court finds all of plaintiffs' claims are barred by res judicata and defendants are entitled to summary judgment in their favor.

Accordingly, the Court GRANTS defendants' Joint Motion for Summary Judgment. This Order effectively terminates this action is this Court.