**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 12, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ANTHONY CLARENCE DESMET,

　　Plaintiff - Appellant,

v.

SCOTTSDALE INSURANCE
COMPANY,

　　Defendant - Appellee.

No. 22-6030
(D.C. No. 5:21-CV-01081-J)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

Anthony Clarence DeSmet filed two separate lawsuits against Scottsdale

Insurance Company relating to an umbrella policy.  The first suit asserted a claim for

breach of the implied duty of good faith and fair dealing (also known as bad faith),

and the second suit (filed shortly after Scottsdale was awarded summary judgment on

the bad-faith claim) asserted a breach-of-contract claim.  This court has already

affirmed the district court's ruling on the bad-faith claim.  *See DeSmet v. Scottsdale*

---

　[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*Ins. Co. (DeSmet I)*, No. 21-6143, 2022 WL 2288681, at *1 (10th Cir. June 24, 2022).

Mr. DeSmet now appeals from the district court's order dismissing his breach-of-contract suit as barred by res judicata.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the dismissal.

## I.    BACKGROUND

As we explained in detail in *DeSmet I*, Mr. DeSmet was severely injured in an automobile accident in 2018.  The person who hit him was an underinsured motorist, so Mr. DeSmet sought coverage for his damages under his own insurance policies: three primary motor-vehicle liability policies that each provided $500,000 in uninsured/underinsured motorist (UM) coverage, and a secondary umbrella policy with Scottsdale that provided $2 million in excess liability coverage and $1 million in excess UM coverage.  Mr. DeSmet was unhappy with how one of the primary insurers was handling his claim, so he asked Scottsdale to pay the claim in 2019.  Scottsdale responded that it would pay only after the primary insurance limits were exhausted.

### A.    First Lawsuit

In 2020, Mr. DeSmet filed a petition in Oklahoma state court, alleging that Scottsdale's conduct surrounding its refusal to pay on his claim amounted to bad faith.  Twice, he stated in his petition that he was *not* bringing a breach-of-contract claim:

> 37.    Consistent with Oklahoma law, Plaintiff is bringing only a single tort cause of action for breach of the *ex delicto* implied duty of good faith and fair dealing, but is seeking damages pursuant to his single tort

2

claim in the form of his loss payable under the policy, along with compensatory damages for Scottsdale's bad faith conduct and punitive damages for Scottsdale's tortious conduct.

38.     Plaintiff is not bringing an independent or separate cause of action for breach of contract, only the tort cause of action referred to in the preceding Paragraph.

*DeSmet I*, Aplt. App. vol. 1 at 18.[1]  At the time the petition was filed, Mr. DeSmet had not received any payment under the UM provisions of his primary insurance policies.

Scottsdale removed the lawsuit to federal court.  The district court granted summary judgment in Scottsdale's favor on October 21, 2021.  Finding the policy language clear, the court reasoned that the umbrella policy was not triggered (and Scottsdale's liability did not attach) until the primary insurers had paid, or been held liable to pay, the full amount of their respective UM coverage—which occurred on March 26, 2020.  Under these circumstances, Scottsdale had no obligations to Mr. DeSmet when he filed his petition on March 3, 2020.  Therefore, the court found, Scottsdale "could not have violated an implied duty of good faith and fair dealing with respect to such non-existent obligations."  *Id.* vol. 6 at 1056.

Also relevant to this appeal, the district court denied Mr. DeSmet's request for leave to amend his petition to include a breach-of-contract claim.  The court

---

[1] We take judicial notice of the appendix filed in *DeSmet I* because it is a publicly filed document in our court "concerning matters that bear directly upon the disposition of the case at hand," *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

reasoned: (1) the request was made within the response to Scottsdale's summary judgment motion, and the local rules prohibited a party from making a motion within a response to a motion; (2) Mr. DeSmet had not sought leave to amend the petition under Federal Rule of Civil Procedure 15(a)(2) or to amend the scheduling order under Federal Rule of Civil Procedure 16(b)(4); and (3) "even if the Court were to consider such a request at this juncture,"[2] the "minimal reasons" provided in the response did not show that justice required the amendment and did not constitute good cause or a showing of diligence, *id.* at 1057. Mr. DeSmet had told the court only that "[a]llowing the amendment will not necessitate any further discovery, but will allow the pleadings to conform to the evidence in this case," *id.* vol. 5 at 837.

This court affirmed both the summary judgment and procedural rulings in *DeSmet I*. *See* 2022 WL 2288681, at *1, *5.

**B.    Second Lawsuit**

On the same day the district court entered judgment in Scottsdale's favor on the bad-faith claim (October 21, 2021), Mr. DeSmet sent a letter to Scottsdale's counsel, requesting payment under the umbrella policy and advising that he "intend[ed] to file a lawsuit asserting a breach of contract claim for UM benefits owed under the [umbrella] [p]olicy" now that it was "ripe," Aplt. App. at 11. Scottsdale declined to pay him, and Mr. DeSmet filed the threatened lawsuit in federal court on November 10. His complaint repeated many of the allegations from

---

[2] The response was filed on October 13, 2021, two months before the scheduled trial date.

4

the petition in the first lawsuit, though the allegations about the primary policies were updated to reflect that Mr. DeSmet had received payments under their respective UM provisions.

The district court dismissed the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) based on res judicata principles, holding: "There can be no doubt that [the] breach of contract claim could have been raised in the earlier action." *Id.* at 68. The court rejected Mr. DeSmet's argument that he could not have brought the breach-of-contract claim in the first lawsuit because it would have been premature at the time he filed his petition, noting that he "could have amended his *DeSmet I* complaint to include the breach of contract claim at the time it became ripe." *Id.* at 67.

Mr. DeSmet filed this timely appeal.

## II.    ANALYSIS

We review de novo the district court's grant of a motion to dismiss on res judicata, or claim preclusion,[3] grounds. *Campbell v. City of Spencer*, 777 F.3d 1073, 1077 (10th Cir. 2014). Oklahoma's preclusion law applies. *See Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1186 (10th Cir. 2014).

The Oklahoma Supreme Court has explained the res judicata doctrine as follows:

> Claim preclusion, or *res judicata* at common law, prevents a party in a
> second suit between the same parties, or their privies, from relitigating an

---

[3] Oklahoma case law uses the terms "res judicata" and "claim preclusion" interchangeably.

adjudicated claim as well as issues of fact or law necessary to the previous
final judgment on the merits, or relitigating those issues which could have
been decided in the previous suit.

*Farley v. City of Claremore*, 465 P.3d 1213, 1227 n.54 (Okla. 2020).  "The purpose

of the doctrine is to prevent piecemeal litigation caused by splitting a single claim

into separate suits."  *Min. Acquisitions, LLC v. Hamm*, 477 P.3d 1159, 1166 (Okla.

2020) (internal quotation marks omitted).  The doctrine "relieve[s] the parties of the

cost and vexation of multiple lawsuits, conserve[s] the resources of the judiciary,

[prevents] inconsistent decisions, . . . [and] afford[s] finality to litigation where the

same parties or their privies have once had a full and fair opportunity to litigate their

claims."  *Feightner v. Bank of Okla., N.A.*, 65 P.3d 624, 629-30 (Okla. 2003).

> The elements of claim preclusion are:  1) identity of subject matter and the
> parties or their privies in the prior litigation; 2) a court of competent
> jurisdiction heard the prior litigation; and 3) the judgment rendered in the
> prior litigation must have been a judgment on the merits of the case and not
> upon purely technical grounds.

*Robinson v. Texhoma Limestone, Inc.*, 100 P.3d 673, 677 n.11 (Okla. 2004)

(emphasis omitted).

On appeal, Mr. DeSmet challenges the district court's conclusion that his two

claims are the same, which is part of the first element.  He also contests the district

court's application of res judicata principles on the ground that he could not have

brought his breach-of-contract claim in the first lawsuit because it would have been

premature to do so.

6

A.    **The bad-faith claim and the breach-of-contract claim involve the same subject matter.**

We start with Mr. DeSmet's argument that the bad-faith claim asserted in his first lawsuit is not the same as the breach-of-contract claim asserted in his second lawsuit, so the district court erred in applying res judicata principles to bar his contract claim. The gist of his argument is that they are independent claims with different elements, such that his "failure to succeed on his claim against Scottsdale for bad faith" did not "affect his rights regarding his separate claim for breach of contract." Aplt. Opening Br. at 17.

Oklahoma law instructs to the contrary. In *Taylor v. State Farm Fire & Casualty Co.*, 981 P.2d 1253 (Okla. 1999), the Oklahoma Supreme Court definitively stated that these two types of claims constitute "a single cause of action" in the insurance context: "While numerous items of damage may result from one injurious occurrence, the party who seeks to recover for an insured loss *has but a single cause of action*, although its claim may be advanced concurrently on *ex contractu* [contract] and *ex delicto* [tort] theories." *Id.* at 1257-58.

Some of the allegations in the first lawsuit track this language from *Taylor*.[4] And Mr. DeSmet brought both bad-faith and breach-of-contract claims against two of

---

[4] Mr. DeSmet pivoted away from his *Taylor*-based recitation of Oklahoma law when he sought to resurrect his breach-of-contract claim. *Compare DeSmet I*, Aplt. App. vol. 1 at 18 (stating that under Oklahoma law, a policyholder "has a single cause of action [but] may advance his claim concurrently on *ex contractu* and *ex delicto* theories") (petition in first lawsuit), *with* Aplt. App. at 9 (highlighting the "broad distinction" between breach-of-contract and bad-faith causes of action) (complaint in second lawsuit).

the primary insurers. Yet on appeal, he insists that "*Taylor **allows*** for concurrent assertion of the two claims" but "**does not *require***" it. Aplt. Opening Br. at 19; *see also id.* at 21 ("[T]he *Taylor* Court acknowledged the separate and distinct nature of the claims for breach of contract and bad faith, and noted a plaintiff's choice in how to assert those claims."). He directs our attention to the permissive "may" within the phrase "although its claim *may* be advanced concurrently on *ex contractu* and *ex delicto* theories," *Taylor*, 981 P.2d at 1258 (emphasis added). But he takes that phrase out of its context and completely disregards the "single cause of action" language at the crux of the holding.

His argument contravenes other well-established Oklahoma law, too. Oklahoma adheres to "the wrongful act or transactional definition of a 'cause of action,'" *Retherford v. Halliburton Co.*, 572 P.2d 966, 969 (Okla. 1977). Under this definition, "no matter how many 'rights' of a potential plaintiff are violated in the course of a single wrong or occurrence, damages flowing therefore must be sought in one suit or stand barred by the prior adjudication." *Id.*; *see also Willis v. RMLS Hop OKC, LLC*, 414 P.3d 374, 379 (Okla. Civ. App. 2018) (reaffirming Oklahoma's commitment to the transactional approach).[5] "Under the transactional test, a new

---

[5] The transactional approach generally tracks the Restatement (Second) of Judgments § 24 and its prohibition on claim splitting. *See Farley*, 465 P.3d at 1237-38. According to the Restatement, the factual grouping that constitutes a "transaction" is "to be determined pragmatically." Restatement (Second) of Judgments § 24(2). "In general, the expression connotes a natural grouping or common nucleus of operative facts." *Id.* cmt. b. "[W]hether the facts are so woven together as to constitute a single claim" depends on "their relatedness in time, space,

action will be permitted only where it raises *new and independent* claims, not part of the previous transaction, based on the new facts." *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1150 (10th Cir. 2006).[6]

Mr. DeSmet does not acknowledge that Oklahoma follows the transactional approach, let alone attempt to apply it to his situation. But it is clear from the significant overlap in the allegations underlying both lawsuits that his claims arise from the same transaction—namely, Scottsdale's handling of his insurance claim and its refusal to pay him anything under the umbrella policy until the primary insurers had paid, or been held liable to pay, the full amount of their respective UM coverage. Indeed, in seeking to consolidate the appeal in *DeSmet I* with this one, he acknowledged the two appeals "arise from the same factual transaction and involve closely-related issues." Aplt. Mot. to Consolidate Related Appeals at 4.

---

origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes." *Id.*

[6] We note that the complaint in the second lawsuit contains one allegation about conduct that occurred *after* the district court entered judgment in the first lawsuit. *See* Aplt. App. at 12 ("Scottsdale's October 29, 2021 refusal to engage in settlement negotiations regarding Plaintiff's contractual damages constitutes a breach of contract."). But Mr. DeSmet does not mention this allegation on appeal, let alone argue that it alters the res judicata analysis in any way. Therefore, we do not address it. *See Addo v. Barr*, 982 F.3d 1263, 1266 n.2 (10th Cir. 2020) ("Issues not raised in the opening brief are deemed abandoned or waived . . . ." (internal quotation marks omitted)); *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) ("This court . . . will not craft a party's arguments for him.").

9

The inextricable connection between the two claims is also evident from Mr. DeSmet's appellate briefs and some of the cases cited therein. *See* Aplt. Opening Br. at 16 ("Breach of the duty sounds in tort, notwithstanding that it also constitutes a breach of contract."); *id.* ("[T]he tort arises from a breach of the insurance contract . . . ."); *see also McCarty v. First of Ga. Ins. Co.*, 713 F.2d 609, 612 (10th Cir. 1983) ("Without question, the [appellants'] tort and contract claims arose out of the same transaction."); *Taylor*, 981 P.2d at 1258 ("[I]ndemnity for loss (under the contract) constitutes the centerpiece element of damages included in every *ex delicto* recovery for bad-faith refusal to settle." (emphasis omitted)); *id.* at 1258 n.22 (discussing the "*ex contractu* underpinnings" to "a bad-faith tort claim for refusal to settle").

As for Mr. DeSmet's argument that the two claims are not the same because they do not share the same elements, Oklahoma law imposes no such requirement. *See Farley*, 465 P.3d at 1237 ("Generally, a cause of action is defined by a 'transaction or occurrence' and multiple theories of liability do not turn a single cause of action into multiple causes of action."). And as the Restatement (Second) of Judgments makes clear, "[t]hat a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims." Restatement (Second) of Judgments § 24 cmt. c.

For these reasons, we hold that Mr. DeSmet's bad-faith and breach-of-contract claims arose from the same transaction and involved the same subject matter for purposes of the first element of res judicata.

**B.     Mr. DeSmet's breach-of-contract claim could have been decided in the first lawsuit, as evidenced by his request to amend his complaint to add that claim.**

Mr. DeSmet also argues that the district court erred in barring his breach-of-contract claim because that claim could not have been decided in the first lawsuit. He reasons that he did not have a cause of action for breach of contract because it had not accrued. This argument derives from the general definition of res judicata, as opposed to a specific element. The res judicata doctrine extends to "any theories or issues that . . . *could have been decided*[] in [the first] action." *Loyd v. Michelin N. Am., Inc.*, 371 P.3d 488, 493 (Okla. 2016) (emphasis added, internal quotation marks omitted).

Mr. DeSmet cites two "unique circumstances" to support his argument. Aplt. Opening Br. at 13. First, he says, it would have been "premature" for him to bring the breach-of-contract claim in the first lawsuit for the same reason the district court found his bad-faith claim to be premature: Scottdale's obligations under the umbrella policy were not yet triggered. *Id.*; *see also* Aplt. Reply Br. at 6 (arguing that he had "no legal right to sue" and the breach-of-contract claim "was not capable of being brought in *DeSmet I*"). Second, he says, the district court denied his request to amend his petition and "deprived [him] of the opportunity" to add a breach-of-contract claim "due to a procedural error." Aplt. Reply Br. at 1. Neither circumstance allows Mr. DeSmet to avoid the res judicata bar.

11

### 1.    "Could have been decided"

The first contention fails under close examination.  It is true the res judicata doctrine extends to theories or issues that "could have been decided."  But under the framework Mr. DeSmet articulates to rescue his breach-of-contract claim, his bad-faith claim had not arisen yet either.  Both claims were equally unripe.  Yet he does not contest that his bad-faith claim was "decided," as is clear from his failure to challenge the third element of res judicata—i.e., that "the judgment rendered in the prior litigation . . . [was] on the merits of the case," *Robinson*, 100 P.3d at 677 n.11.

In any event, the very fact that Mr. DeSmet sought leave to amend his complaint in the first lawsuit to include a breach-of-contract claim demonstrates that he *could have brought* the claim in that lawsuit.  *See U.S. Truck Co. v. Nat'l Am. Ins. Co.*, 186 F. Supp. 2d 1184, 1190 (W.D. Okla. 2002) ("'[B]oth courts and commentators agree that theories which were the subject of an untimely motion to amend, filed in the earlier action, "could have been brought" there.'" (quoting *Nilsen v. City of Moss Point*, 701 F.2d 556, 563 (5th Cir. 1983)); *cf. Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[F]or res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings or otherwise in the earlier action." (footnote omitted)).

Moreover, Mr. DeSmet's predicament is a result of his own litigation strategy. A plaintiff's "[choice] to advance, at [a] late date, a new theory of liability arising out of the same transaction does not suffice to obviate the application of the doctrine of

res judicata," nor does it show that he "lacked the opportunity to raise those theories" in the first lawsuit. *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1172 (10th Cir. 2000). To avoid his current predicament, Mr. DeSmet could have filed both claims in his first lawsuit after the three primary insurers had paid their share, thus triggering Scottdale's contractual duties. Alternatively, he could have rectified what turned out to be a bad tactical decision by filing a timely, procedurally proper motion to amend his complaint after that trigger date. He did neither. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 403 (1981) (Blackmun, J., concurring) (reasoning that equity does not require the res judicata doctrine to "give way" where a party made "a deliberate tactical decision" and was not "caught in a mesh of procedural complexities" (internal quotation marks omitted)).

### 2. Denial of Motion for Leave to Amend

The district court's denial of Mr. DeSmet's motion for leave to amend his complaint does not allow him to avoid the res judicata bar either. The umbrella policy was triggered on March 26, 2020, and the deadline to amend pleadings in the first lawsuit was September 10, 2020. As noted in the dismissal order, Mr. DeSmet "clearly believed" a breach of contract had occurred as of August 24, 2020. Aplt. App. at 67. In a filing on that date, he stated, twice: "*Defendant breached its contract of insurance with Plaintiff by failing to pay the UM policy benefits it owed to the Plaintiff. In addition, Defendant breached its ex delicto duty to deal fairly and in good faith with Plaintiff . . . .*" Joint Status Report & Disc. Plan, No. CIV-20-

330-J, ECF No. 19 at 1, 3 (emphasis added).[7]  Despite this awareness, he did not seek to timely amend his complaint to add a breach-of-contract claim.

Instead, Mr. DeSmet waited until October 13, 2021—two months before his scheduled trial date—to make his request.  Even then, he sought leave to amend in one line in a response brief in contravention of local rules and he did not follow the Federal Rules of Civil Procedure.  This court has already affirmed the denial of his request to amend, finding no abuse of discretion under these circumstances. *DeSmet I*, 2022 WL 2288681, at *5.  We will not revisit that decision here.  *See also U.S. Truck Co.*, 186 F. Supp. 2d at 1190 ("Denial of leave to amend does not negate an otherwise valid defense of res judicata, particularly when that denial is premised upon the party's own dilatory conduct.").

### III.  CONCLUSION

We affirm the judgment of the district court.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[7] This document was not included in the record for *DeSmet I*, but we take judicial notice of it as a publicly filed document.  *See Ahidley*, 486 F.3d at 1192 n.5.

14